May it please the Court, my name is Scott Sugarman, I am counsel for Joshua Harvest. With the Court's permission, I would request two minutes reserved for rebuttal. Thank you. Your Honor, I would submit to you that the central question before this Court can be reduced to several core propositions. First, Joshua Harvest initiated a habeas proceeding to challenge the constitutionality of his murder conviction. The State opposed it. This Court agreed with the challenge he made and granted habeas. And both this Court and the district court ordered the State to release him unless it initiated proceeding within 60 days. Indeed, the Court's order provided two requirements. One, to do that, release, if he is not, within 60 days, they did not do one or the others. And secondly, the Court's order instructed the State to send a notice of compliance within 60 days. It is unquestioned that the State did nothing. It, as it said in its own brief, had no good reason to let the time lapse. It was within its power to comply. It simply did nothing. So I submit respectfully that the issue before you is whether the State is bound by the rule of law or may it disregard with impunity this Court's rulings and the rulings of the district court. But you really don't think that the State is bound by the rule of law. Kennedy, it's not quite so stark because, as I understand it, there seem to be two lines of cases. Do you agree with that? If the Court – Your Honor, if you're asking me whether there are two lines of cases that say the conditional writ becomes an unconditional writ and a second line that says the State may go in and seek relief, I would agree. All right. And – but even if – So if the second line of cases is the law, then State had the right to do what it did, right? Respectfully, no. What the State – The seeking relief would be under – is there common ground in this case? I'm a little confused, that this is 60B or nothing, or is there some other possibility? I'm sorry, I didn't hear your question. Either – in other words, that this has to be – that what the State did, although it didn't say it's what it was doing, had to be done under Rule 60B and should be measured by the standards of Rule 60B. Is that your position, first of all? The State, in fact, did say either 60B or the general equitable principles under habeas. It referred to both in its brief. And – but it seemed to be saying, and it did say, that even if it goes under the general equitable principles, it still had to show excusable neglect to seek relief after the 60 days expired. That if it's not – But the district court didn't really – did it view the issue as being with an excusable neglect issue, applying the 60B standards and Pioneer and all that? It didn't really say. The court is correct. The district court had a one-page order, which is – I believe it's on page 80 or so of the excerpt of record, Your Honor, in which there was no citation of authority. Indeed, the Attorney General in its briefs didn't argue the standards set, as you say, in Pioneer or in this Court's opinion in Pinque, and the other cases cited in my briefs here. There is no substantive discussion of them. But in fairness, I must note that in the first sentence of the second paragraph, the district court said, I find excusable neglect. That's correct. But without any consideration of the relatively elaborate discussions that have occurred both in the U.S. Supreme Court and in this Court about what it means. But I think what Judge Toshima was referring to is then there are a bunch of cases in other circuits that have just done this, haven't cited 60B, have just done it. And it – how do you understand those cases? What were they doing? I think they really break into two groups. The first group is there's no discussion by the defendant's lawyer, Petitioner's lawyer often, that in fact it has to come to that. And normally when it comes – the other cases that the Attorney General cites and I cite some of them, there is no conversation about that at all. It simply usually is later in the business when the defendant, usually having blown a period for appealing, seeks some other kind of relief. And so there is really no substantive discussion of what is the standard by which the State may secure additional time. But it does appear from the U.S. Supreme Court's decision in Gonzales two years ago that 60B does apply in habeas, and therefore its requirement of excusable neglect would be required. I don't think it's sufficient for a district court judge just to say, you know, it's a mistake, let it go. Otherwise, it really does make some mockery of the order that said you shall release. I mean, it wasn't – What about the pertinence of cases dealing with injunctive relief and the modification of injunctive relief? It seems to me that that's probably the best analogy, because this essentially is injunctive relief. And there's a whole line of cases there that neither of you seem to have cited. I don't know that they're literally 60B cases. Maybe they are, but they tend to deal more with changed circumstances or other kinds of reasons other than excusable neglect for changing the order. The Court is certainly correct. Neither I nor the Attorney General addressed those matters to you, so I confess some ignorance. But I think they're really different. I mean, there certainly is a relatively well-established body of case law for habeas. And as the Court is aware, the tradition, until not that many years ago, was simply the Court ordered, vacated the conviction and remanded the matter back to the State court for proceedings. As an accommodation to the State, courts have now more commonly issued conditional writs. The Court orders a relatively prompt response, if the matter can be corrected, or the defendant's release. That's what it did here.  Let me ask you some practical questions, because I was very confused as between the parties what, you know, exactly why you think any of this matters here. Now, is your position that if he were released tomorrow because we decided that the excusable neglect didn't work or that it wasn't an appropriate order, could the State retry him? Yes. I don't know. Well, this Court can order what it deems equitable under habeas, but I have not asked that the State be barred from retrying Joshua Harvest in Contra Costa County, and I believe it could. But you did protest vigorously the issuance of an arrest warrant to restart the murder proceedings while he was – after it became apparent that they hadn't released him when they were supposed to, and you regarded that as a sham. So why isn't this the same? Why wouldn't this be – I don't see why they couldn't do it, but you seem to think that there was a problem with that. I do, Your Honor, because I believe double jeopardy unequivocally forbids it. And that's what I'm trying to understand. Why would that be double jeopardy and this not be double jeopardy? Because the traditional view has been that when an appellate court undoes a conviction, it is not – double jeopardy principles do not bar the retrial absent insubstantive evidence. So it's a difference between doing the same case and starting over again? Well, I would agree – the State could start over again. The State could dismiss or this Court could order the dismissal of the pending proceedings. Under California State law, the State, in fact, is entitled to re-prosecute it, because under Section 1387 and related sections of the Penal Code, the State has allowed more than one shot absent a finding of insufficient evidence. No such claim is made here. So were this Court to say, we're ordering the release of Mr. Harvest and you are barred from re-prosecuting him on this prosecution, the State could file a new complaint in Contra Costa County and commence proceedings to try him. I do not believe that. And you wouldn't claim double jeopardy? No, not in California, because you have not made a finding of insufficient evidence. So I don't understand why – what was wrong with their – what they were trying to do to cover their bases at the time they were trying to do it. Because they actually had, still in effect, because of the conditional order of the district court following your order, there was – he, in fact, was sitting in prison following the conviction. And they filed a new charge based on the exact same proceeding. All right, so it hadn't been dismissed yet, that's what you're saying. Right. Well, the Attorney General conceded it was only to keep him in jail. Excuse me, I didn't mean – only to keep him in jail. That was his sole purpose, and it was clearly in violation of double jeopardy. And as soon as that claim was made in the trial court, not only did the State say, we don't oppose that, the Court found that it was. And also, if he were released, they could also change his sentence and re-arrest him on – for that reason. One of the issues that does come up in these decisions is to what extent the Court could order release, which becomes really walking to the courthouse gate and being re-arrested. And there are some decisions, I think Burton v. Johnson from the Tenth Circuit simply said, we're not going to have that. If we're ordering release, that person's released until there is a new order of commitment. The Court may recall this is also, I believe, a murder case. I see what you're saying. But so you're saying they couldn't – they couldn't hold him in prison pending the proceedings, but they can go ahead with the proceedings. Yes. And once the proceedings were concluded, they could then arrest him. Right. If he were tried and convicted, the judge could remand him into custody. If the judge is going to impose a sentence, the judge could sentence him back into custody. But it's – The notion being that what's really being governed at this point is – is his custody status, not really his judicial status. There are really two pieces. One is certainly his custody status. The second one, I argued in my papers, is that the State was given an option by this Court in the prior proceedings to simply reduce it from first to second degree murder. It was an option that I argue essentially the State forfeited when, after 60 days, it had done nothing. And, again, it seems to me that that's an appropriate response to the Court. Indeed, the Attorney General says in his – in his papers, habeas really allows the Court to do anything that's equitable, and, indeed, there are many cases to that effect, including some from the circuit. And it seems to me that this is a case where the State is different than the other – excuse me – excusable neglect cases that come before you. The cases that this circuit has decided, such as Kyle and Committee v. Yost, usually involved a party seeking something for itself. Here, the obligation of the State was to prevent further harm to the defendant. It's really quite different. When someone says I could not do it. Kagan. I don't understand the answer to the question of whether you are agreeing that the State could re-sentence him, assuming they release him, could re-sentence him, and then he would go back into custody or not. You say sometimes yes and sometimes no. I'm confused about the Court's question. Is it to re-try him or simply to re-sentence him? I asked first to re-try him, but now I'm asking re-sentence. It is my request in the papers that this Court should not allow him to reduce from first to second degree murder. If the Court rejects that, then in fact we'll release him. But what would be the theory for that? I mean, it seems to me that you have a coherent theory if you say, well, they were supposed to release him, so they have to release him, and then they can go ahead and do what the Court said they could do, and then they can bring him back into custody again. But I don't see why you would distinguish between the re-trying option and the re-sentencing option for that purpose. I believe there is a distinction that I've tried to point out in my papers where some courts have done just that. That is, they've adopted more than just a release order. In some cases, they have simply dismissed this action, not barring further prosecution on another docket. In some cases, they've barred any further prosecution. In these circumstances, I have not asked you to bar any further prosecution completely. Maybe I'm in error in doing so, but I have not sought that belief on behalf of Mr. Harvest. But I do think the Court allowed the Attorney General something special by allowing a reduction from first to second degree murder. It was to exercise that option within 60 days. It failed to do so. And therefore, I'm asking the Court to withdraw that as an option for them, leaving in place, if they wish, a re-trial of Mr. Harvest on the charge that he committed a first degree murder. The jury would then decide what should happen. I've used my time. I'd like to have a minute or two if I may, if I could. Thank you. Good morning. Jeremy Friedlander for Respondent. I think there are two issues here. The first issue is, is there authority in the district court for retroactively extending time after that deadline has passed, even though, by definition, the writ becomes, the conditional writ becomes unconditional when the rit is extended by the federal rules of civil procedure. And the second issue is, is there authority in the district court for retroactively extending time after that deadline has passed, even though, by definition,  by the federal rules of civil procedure. And the third issue is, is there, once that time expires, the district court lacks authority, and you don't look to this equitable notion. Now, maybe I'm misunderstanding it. But if I'm wrong Let's suppose I'm wrong, okay? I don't think there are two lines of authority here. I think there's an overarching way to harmonize it and say, yes, the district court does have authority to do it if it's equitable under the 60B procedures, unless the extension would itself be a constitutional violation. And I think that what Appellant is really suggesting here is that 60-day period was itself a constitutional right that he had. I understand him to be saying something much more modest, which is that if you use the Pinkay or Pioneer standards and ask whether or not or whether he's saying it or not, let's proceed on that premise, that we're going to use the Pioneer or Pinkay standards and we're going to decide whether there was excusable neglect. Now, first of all, the district judge here, there's no evidence that he did use those standards. He just said, you know, in passing that it was excusable, but he didn't give any indication of why the fact that you let something sit on your desk for 100 days and just forgot about it, or however many days it was, meets those standards. He may be, you know, maybe he could, you know, there seems to be under Pinkay now a great deal of deference to the district court, and maybe this could have been explained, but as a minimum, there's no explanation. No, there isn't. It's not my understanding that there were that it is required that there be explanation in order to get deference, but be that as it may, I'm happy to. Why would you say this was excusable neglect? I mean, in the like. Go ahead. I'm sorry. I think I have three points to make on that. On prejudice question, okay, there was no prejudice. There was no danger of prejudice. Petitioner comes here and says the danger of prejudice is if you had moved timely, then I could have gotten resentenced in a timely fashion, and if I had gotten resentenced in a timely fashion, I could have gotten a concurrent sentence, and if I did get a concurrent sentence, then I was parole eligible. So your delay has deprived me of a timely parole eligibility hearing. And we responded to that in a number of ways. I'm not going to go through them all, but I will highlight the very important one because appellant doesn't address it, and that is this Court, that is to say this trial court, has shown us that that is an empty claim. When this case was originally before the trial court on remand from the State Appellate Court, which said we don't have a second degree murder here in the one case, we only have a manslaughter, the trial court said I am now going to change your sentence from a concurrent sentence to a consecutive sentence. Why? We don't know exactly why, but it was probably because he wanted to give this man the maximum, and he had already given him the maximum with an LWOP, and when the LWOP was thrown out, he gave him the maximum with consecutives. So for an appellant to stand here and say, well, now we've got reduced culpability because it's a second degree murder, and the reduced culpability might persuade the trial judge to change this to a concurrent sentence is not only wrong but unsupportive. Kagan. Why isn't the prejudice simply that he remained in – he was supposed to be released after 60 days if X did not happen. X did not happen, and he was not released. Why isn't the prejudice simply that he's in custody when he wasn't supposed to be in custody for the time period between when you should have acted and when you did act? He was supposed to be released under the habeas order. I'm not talking about under the underlying order, but under the habeas order, if you didn't do X within 60 days, he was supposed to be released. Right. And what were the – And there are reasons for that. I mean, one is, you know, you have to get on with your life. He does. And also, as pointed out, I mean, the former form of order was simply to have release, and the conditional was essentially an accommodation of the State's timing, and then the State doesn't do that. So why isn't the prejudice he was in jail for 60 or 80 more days than he should have been? Because he would have been immediately rearrested. That's why it was not prejudicial. We had the right to do so, and we would have done so. Well, that's a question. I mean, and I don't know the answer to that question. As I understand Petitioner's position, it's that he couldn't have been rearrested. And that makes some sense to me, because what the habeas did was release him from custody. He could – you could proceed against him, and once the proceedings went forward, you could then arrest him. But to arrest him on a pretrial sort of a basis when you ran out the 60 days that you were supposed to be able to do that in doesn't seem quite right to me. I can't address that further. I will simply assert that he could have been arrested. That's my understanding from the prosecutor. I have not looked at it in great detail, but I – I don't have an answer to that. You could have instituted the proceedings, I suppose, and then arrested him. But I find it hard to believe that it wouldn't be a violation of an order that he not be in prison, that you then go and arrest him again. Well, we would have instituted proceedings, because we instituted proceedings immediately upon finding this out. All right. So at that point, I presume – I don't know this, but perhaps you could have rearrested him. Okay. That's a prejudice question. Okay. Now, on the fault question, is there a good reason for having screwed up as I did? Appellant continues to confuse the distinction between a conduct that is negligent and negligence that is excusable. When I said to the district court, as I say now, my conduct was professionally inexcusable, I was conceding that I acted negligently. I never conceded or suggested that I conceded that that negligence was inexcusable in the larger context. Enough said about that. I just think that distinction needs to be clear. Well, except that you have – Pinkham was a very hard case, as the opinion suggests. And the difference there, it seems to me, in terms of the excusability of the neglect was that essentially there they had a system that screwed up. Here, it appears you had no system. You simply put it on the side of the desk and it got lost. Does that make any difference in terms of the excusability of the conduct? I don't think it does. For the record, that's not what happened. What happened was that I didn't lose it or put it on the side of the desk. You just didn't think you needed to do anything. I didn't think I had to do anything. And I was foolishly incorrect because I didn't read. But in general, the State, not you personally, but the State had no system for communicating these orders to the person who needed to get them. It did have a system. It had to – it relied on me. And that system was obviously flawed because I didn't understand what I needed to understand. So I don't think it does make a difference. But of course, in – I think that the factors in Pinkei, as I recall, it was a – not an abuse of discretion to – well, I'm getting confused. I don't remember the holding. I don't think – the bottom line is that I don't think there's anything in Pinkei that suggests that the district court here abused its discretion in granting it. And I think all the cases have suggested that the court certainly has that authority to do so unless there is that constitutional violation. And that's the point about the – the final point about the question of good faith and bad faith. The appellant does not contest that there was any bad faith in the failure to meet the 60-day deadline. He finds bad faith in what we did afterward. And again, I may be misunderstanding, but it seems to me his position requires one to believe that we knew there was a constitutional violation here and we thumbed our nose at this constitutional violation. And that is to say the – that there was a constitutional violation in failing to act in 60 days. And we plainly did not know and did not believe that there was a constitutional violation in failing to act in 60 days. And we acted in good faith with what we thought the law allowed and what our obligations as public servants to protect the community required. And isn't there a sort of deterrence problem here? I mean, if we continue to allow these retroactive changes, at what point is – do our orders become – or the orders of the district court become not worth the paper they're written on in these habeas cases? I don't think there is a deterrence problem, because I don't find and the inside of the case. I mean, it was surprising to me that there are just lots of these cases out there, not only, you know, with California, but in general. I mean, it just seems to happen a lot. Well, I'm aware of – Helen has brought up one other case in which it happened. No, no, I said I'm not talking about – but, you know, there are a fair number of decided cases in which agents – States were supposed to release people and didn't, and then went and got a retroactive order. Well, the deterrent effect is what I'm going through right now, okay? Having to be here. Having to be here and having this whole delightful case when I could have been doing better things. And if anybody thinks that that's not a deterrent, then they just haven't been through it. And I'm not suggesting that this is the worst thing that's ever happened or could happen, but it certainly is embarrassing, and it seems to me that's a deterrent. Okay. Thank you very much, Your Honor. You're welcome. That's helpful. Your Honor, I would like to make three points in response to Mr. Friedlander's comments. First, I actually think that he's been very enlightening, although he's made a new argument here, about what he thinks of excusable neglect. It's meaningless. His view is that once the Court issues the order, it can do whatever it wants unless there's a new constitutional violation. He believes that's my position, which it's not. It seems to me, rather, what the Supreme Court said in Gonzales two years ago, and this Court has said in Pinca and other decisions, yes, you can get relief under Rule 60b, which he expressly relies on, but it's limited to certain circumstances and we look at certain factors. So what he's basically saying is, look, if I come in here and say, look, I wasn't trying to say this. But what about the prejudice point? This case is unusual in that way because of the nature of the order, which was to allow a conversion to second-degree murder, which ordinarily there will obviously be prejudice, because a person presumably the order usually will be retry him or else do this. And ordinarily, if there's going to be a retrial, there's at least some chance he's going to win and there would be prejudice. But in this instance, the prejudice seems much less obvious. I disagree in two regards. One, you yourself pointed out, he's in Mr. Harbis' entitled to his release from State prison under the order of the Court. The Attorney General concedes that under the State rules, he would have been eligible for parole if he got a concurrent sentence beginning in 2003, which means in 2005 when this order was issued, two years and four months ago when it came to fruition, he could have been released on custody. And again, I don't have the burden to show prejudice, for excusable neglect. The State has the burden as the moving party to show no danger of prejudice, and the best that Mr. Friedlander could tell you was the trial judge probably wanted to give him the maximum sentence. Well, that doesn't eliminate a danger of prejudice. To the contrary, it confirms there's a danger. Kagan. I could have found that out a long time ago. That's the other problem, because you've been objecting to having this re-sentencing go forward. It could have gone forward, we would have found it out, and there would have been a debate about it. And I assume that's why it hasn't gone forward. But there's really quite a difference between him applying to the parole board in all of its idiosyncrasies and questions of balance and being entitled to release under a district court Ninth Circuit order. Under one, it's very clear, I appeal to the three of you or to Judge Ware, he's ordered release. The parole board is an entirely different kettle of fish with a whole different set of discretion. So I think there really is a danger of prejudice beyond the fact that he's been kept in custody, the fact that he could have had the State acted promptly. But in either case, even though this is an unusual order, as you say, the basic structure of the conditional order was no different than most. Release if you don't do something within 60 days. The prejudice inquiry is different. Thank you very much, Your Honor. May I just make one last comment, Your Honor? About 20 seconds. Done. The Court rightly noted this is not the only time. I cited to you Curry v. Andrews. It is a question of deterrence matters. And one last thing. While I don't minimize the embarrassment of a lawyer coming before you saying, I screwed up, we should remember that Joshua Harvest is still in prison. That is something that matters, and I think the Court should respond to it. Thank you very much. We are going to take the case of Harvest v. Gonzales. No, Harvest v. Castro is submitted, and we are going to take a recess. Thank you. Thank you. All rise.
judges: Gibson , Tashima, Berzon